IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHEL CHALHOUB,<br>          Plaintiff<br><br>v.<br><br>COMMONWEALTH OF PENNSYLVANIA; COLONEL ROBERT EVANCHICK, Commissioner of the Pennsylvania State Police; PENNSYLVANIA STATE POLICE TROOPER LUKASZ OLSZAR; COUNTY OF PIKE; and CRAIG A. LOWE, Warden Pike County Correctional Facility,<br>          Defendants | No. 3:23cv592<br><br>(Judge Munley) |

## MEMORANDUM

Before the court is a motion to dismiss filed by Defendants County of Pike ("Pike County") and Craig A. Lowe, Warden Pike County Correctional Facility ("Warden Lowe"). Having been fully briefed, this motion is ripe for a decision.[1]

### Background

On May 23, 2021, Defendant Pennsylvania State Police Trooper Lukasz Olszar ("Trooper Olszar") responded to Plaintiff Michel Chalhoub's residence in Dingman Township, Pike County, Pennsylvania for a report of a "physical

---

[1] The Honorable Robert D. Mariani transferred this case to the undersigned on November 7, 2023.

domestic." (Doc. 1-2, Exh. A. to Pl. Compl., Police Crim. Compl., Aff. of Prob. Cause, ECF p. 4).[2] Per Trooper Olszar's affidavit of probable cause, the police communications operator advised there was an active Protection From Abuse order ("PFA order") issued against plaintiff for the protection of another person at the residence. (Id.) On scene, another trooper interviewed the purported victim of physical abuse, and she indicated that plaintiff threw an ashtray at her causing burn marks on the back of her shirt. (Id.) Per Trooper Olszar's narrative, the PFA Order was issued for the protection of that person and he indicated in his affidavit that the expiration date of that order was August 12, 2023. (Id.) After burn marks on the alleged victim's shirt were reportedly observed and photographed, Trooper Olszar placed plaintiff into custody and charged him with violating an active PFA order. (Id.)

Per plaintiff's complaint, however, the PFA order had expired months earlier, on February 26, 2021. (Doc. 1 ¶ 20). Plaintiff alleges that he told Trooper Olszar that the PFA order had expired, but Trooper Olszar accused plaintiff of lying and still placed him into custody. (Id. ¶ 18). Trooper Olszar told the arraigning state magisterial district judge that the PFA order remained active, and

---

[2] These background facts are derived from plaintiff's complaint and exhibits. At this stage of the proceedings, the court must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

the judge credited the trooper's incorrect statements and not the plaintiff's accurate statements. (Id. ¶ 22).

The magisterial district judge set bail at $40,000, which plaintiff could not post. (Id. ¶ 24). Plaintiff was committed to the Pike County Correctional Facility ("Pike CCF") based on Trooper Olszar's statements that plaintiff violated the PFA Order. (Id. ¶ 25).

Plaintiff spent three days at Pike CCF. (Id. ¶ 28). On May 26, 2021, a Pike CCF employee told plaintiff to gather his belongings to leave the jail without further explanation. (Id. ¶ 29). Authorities released plaintiff and gave him transportation to a train station. (Id. ¶ 30). Plaintiff avers that he was released from Pike CCF "because the personnel in charge of that facility determined that there was no basis for [plaintiff] being incarcerated." (Id. ¶ 31).

Plaintiff also alleges that he had open heart surgery in August 2020. (Id. ¶ 8). During that surgery, plaintiff's ribs were wired together. (Id.) He needed another surgery on May 8, 2021 from the constant pain in his ribs. (Id. ¶ 9). During that surgery, plaintiff had metal plates placed in his chest. (Id. ¶ 10). When Trooper Olszar placed plaintiff into custody, a drainage tube was still attached to the bottom of plaintiff's chest from the most recent surgery. (Id.)

Upon release, plaintiff took the train to his son's house in New Jersey. (Id. ¶ 30). The next day, plaintiff suffered severe pain and went to an emergency

room. (Id. ¶ 35). As a result, plaintiff received an operation due to a "serious life-threatening" internal infection, which continues to occur. (Id. ¶ 35, 42). He further alleges that the infection occurred because he could not attend the scheduled medical procedure to remove his drainage tube during his incarceration. (Id. ¶¶ 11, 34-35).

Based on the above allegations, plaintiff asserts two causes of action in his complaint: Count I – a claim pursuant to 42 U.S.C. § 1983 ("Section 1983") for alleged Fourth and Fourteenth Amendment violations against all defendants; and Count II – a state law claim for false imprisonment against Trooper Olszar, Pike County, and Warden Lowe. (Id. ¶¶ 45-56).

Defendants Pike County and Warden Lowe responded to the complaint with the instant motion to dismiss for failure to state a claim.[3] The parties have briefed their respective positions and this matter is ripe for disposition.

---

[3] Defendants Pike County and Warden Lowe also move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) for improper service based on deficient proofs of service. A summons must be served with a copy of the complaint by a person who is at least 18 years old and not a party to the action within ninety (90) days of the complaint being filed. FED. R. CIV. P. 4(c)(1)-(2), 4(m). The Rules of Court for the Middle District of Pennsylvania ("Local Rules") require affidavits of service to be filed within fourteen (14) days after service. M.D.PA. L.R. 4.1

Plaintiff filed this action on April 6, 2023. (Doc. 1). He also filed two affidavits of service collectively indicating that a copy of the summons and complaint were served on the "Pike County Commissioners" and the "Pike County Warden" by a Pennsylvania State Constable on April 28, 2023. (Docs. 15, 21). Although, plaintiff filed affidavits of service beyond the deadline set by Local Rule 4.1, (see id.), defendants were otherwise properly served according to these affidavits and the court will thus deny the Rule 12(b)(5) motion.

**Jurisdiction**

Because this case is brought pursuant to Section 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state-law false imprisonment claim pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted). Furthermore, courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a Rule 12(b)(6) motion. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted).

**Analysis**

The complaint contains the following factual allegations specific to Pike County and Warden Lowe:

- Pike County controls and operates Pike CCF "and is responsible for the orderly and legal operation of same, including ensuring that inmates are properly housed therein." (Doc. 1, Compl. ¶ 6).

- Warden Lowe "was responsible for overseeing the day to day operations" of Pike CCF (Id. ¶ 7).[4]

---

[4] Per the complaint, Warden Lowe is sued in his "original capacity." (Doc. 1, ¶ 7). Given the contents of plaintiff's pleading, the court construes this notation as one indicating that Warden Lowe is sued in his official capacity.

- At the time of plaintiff's commitment to Pike CCF, plaintiff protested that there was no PFA Order, but the protests were rejected, and he was incarcerated by the guards of that facility despite being innocent. (Doc. 1, Compl. ¶ 26).

- Plaintiff was unlawfully detained at Pike CCF for three days. (Id. ¶ 27).

- On the third day, an unknown Pike CCF employee told plaintiff to gather up his belongings to leave the facility. (Id. ¶ 29).

- Plaintiff believes he was released from Pike CCF because "the personnel in charge of that facility determined there was no basis for the [plaintiff] being incarcerated." (Id. ¶ 31).

Plaintiff claims the above facts support a theory that Pike County and Warden Lowe violated Section 1983 by falsely imprisoning him. (Id. ¶¶ 50-51). Plaintiff also uses these facts to support his state law false imprisonment claim against these defendants. (Id. ¶ 54).

Pike County and Warden Lowe move to dismiss the complaint, arguing, in part, that plaintiff failed to state a viable Section 1983 claim against Pike County and Warden Lowe and failed to sufficiently plead a state-law false imprisonment claim against Warden Lowe.[5] The court will address the arguments relative to plaintiff's claims against Warden Lowe first.

---

[5] Plaintiff's complaint contains a claim for punitive damages, (Doc. 1, *ad damnum* clauses),. which Defendants Pike County and Warden Lowe also move to dismiss. (See Doc. 14, Br. in Supp. at 13). Plaintiff agrees with moving defendants' argument that he is not entitled to punitive damages with respect to his claims against Pike County. (Doc. 24, Br. in Opp, at 11-12). Accordingly, plaintiff's claim for punitive damages against Pike County will be dismissed without additional discussion by the court.

### a. Whether Plaintiff's Complaint States a Section 1983 Claim Against Warden Lowe

Plaintiff filed this action against the defendants pursuant to Section 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002). To establish a claim under Section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id.

Plaintiff specifically names Warden Lowe as a defendant, asserting that he and the other defendants "knew or should have known that there was no outstanding [PFA Order] against [p]laintiff and that the [p]laintiff had not violated any outstanding [PFA Order]." (Id. ¶ 47). But, in Section 1983 actions, a plaintiff must plausibly plead facts that demonstrate a defendant's personal involvement in the alleged misconduct and cannot rely solely on a *respondeat superior* theory of liability. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020)(citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Pleading personal involvement requires particular allegations of personal direction or of actual

8

knowledge and acquiescence. Id.; see also Iqbal, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to ...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Plaintiff's complaint is silent as to the alleged action or inaction of Warden Lowe. There are no particular allegations of direct wrongful conduct. There are no allegations that Warden Lowe directed guards to do or not do anything related to plaintiff's claims. Likewise, the complaint does not contain allegations that Warden Lowe had any actual knowledge of plaintiff's circumstances. The facts of the complaint, even when assumed true and construed in a light most favorable to plaintiff, only set forth a Section 1983 claim against Warden Lowe under principles of *respondeat superior*.[6]   Accordingly, the court must dismiss the Section 1983 claims against Warden Lowe in Count I of the complaint for lack of personal involvement.

---

[6] Plaintiff's brief in opposition argues that Warden Lowe is liable under Section 1983 for failure to train and supervise personnel so that they would not "imprison[] a person who had committed no crime." (Doc. 24 at 6-7).  Plaintiff, however, has not made any factual allegations against Warden Lowe in the complaint that would support this argument. (See Doc. 1).  The court will not address arguments by the parties that extend beyond the facts pled in the complaint.

### b. Whether Plaintiff's Complaint States a Claim for False Imprisonment Against Warden Lowe

Plaintiff's other claim against Warden Lowe is a state law claim for false imprisonment. Under Pennsylvania law, "[t]he elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (1994). False imprisonment is an intentional tort. See Gray v. Huntzinger, 147 A.3d 924, 927 (Pa. Super. Ct. 2016); Little v. York Cnty. Earned Income Tax Bureau, 333 Pa. 481 A.2d 1194, 1200 (Pa. Super. Ct. 1984).

Warden Lowe argues the complaint lacks facts to support a claim of false imprisonment against him since he does not determine probable cause to justify an arrest or incarceration and he does not conduct investigations into guilt or innocence. After careful consideration, the court will grant the motion to dismiss based on the facts pled in the complaint.

As alleged and corroborated through exhibits attached to the complaint, this case involves a situation where plaintiff was arrested without a warrant for the violation of a PFA order. (Doc. 1, Compl. ¶¶ 12-13, 16, Doc. 1-2, Exh. A, Police Crim. Compl.). Plaintiff then appeared before a state magisterial district judge, who arraigned plaintiff and set monetary bail in the amount of $40,000. (Doc. 1, Compl. ¶¶ 21-25). Plaintiff could not post bail and he was then committed to Pike CCF. (Id. ¶¶ 25-26).

Generally, under the Pennsylvania's Protection From Abuse Act ("PFA Act"), courts may grant protection orders to those alleging abuse from family or household members, or sexual or intimate partners. See 23 PA. CONS. STAT. § 6102(a) (definitions); § 6107(b) (temporary orders); § 6108 (relief); § 6110 (emergency relief from minor judiciary).  The police are tasked with enforcement of PFA orders once a petitioner obtains relief. See 23 PA. CONS. STAT. § 6113. An arrest for a violation of a PFA order may be made by the police "without warrant upon probable cause" whether the violation is committed in the presence of the police officer or not.  23 PA. CONS. STAT. § 6113(a).

After an arrest for contempt of a protection order, the PFA Act directs that the defendant be taken by the police officer "without unnecessary delay" to the court or to a magisterial district judge if the court is unavailable.  23 PA. CONS. STAT. § 6113(c).  Defendants are also entitled by statute to a preliminary arraignment "without unnecessary delay."  23 PA. CONS. STAT. § 6113(d). Hearings on contempt must be scheduled within ten days of the filing of the charge or complaint.  23 PA. CONS. STAT. § 6113(f).

Magisterial district judges in Pennsylvania have jurisdiction to preside at arraignments and fix bail.  42 PA. CONS. STAT. § 1515(a).  Under the Pennsylvania Rules of Criminal Procedure, where a defendant is arrested without a warrant, a defendant shall not be detained after a preliminary arraignment

unless the issuing authority, i.e., the magisterial district judge, "makes a determination of probable cause." PA. R. CRIM. P. 540.

Accordingly, plaintiff has alleged that by the time he was committed to Pike CCF, a magisterial district judge made a determination of probable cause and set bail. In opposition to the motion to dismiss, plaintiff has not cited any statute or case requiring wardens of county jails to second-guess or override determinations by magisterial district judges and the court's research has uncovered none.

Additionally, assuming the facts in the complaint to be true, plaintiff has pled that he was released because "personnel in charge of [Pike CCF] determined there was no basis for the plaintiff being incarcerated." (Doc. 1, Compl. ¶ 31). Thus, he has alleged that officials in charge of Pike CCF, i.e. Warden Lowe, released plaintiff without court order after independent fact-finding. In this sense, plaintiff's false imprisonment allegations against Warden Lowe are self-defeating where he fails to allege that Warden Lowe was aware, before plaintiff's release, of the absence of legal authority to keep plaintiff in jail. Accordingly, plaintiff's state law false imprisonment claim against Warden Lowe will be dismissed.[7]

---

[7] Additionally, Warden Lowe also claimed statutory immunity pursuant to the Pennsylvania Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. §§ 8541, *et seq.* in his motion to

12

### c. Whether Plaintiff's Complaint States a Section 1983 Claim Against Pike County

Regarding plaintiff's Section 1983 claim against Defendant Pike County, the municipality moves for dismissal pursuant to <u>Monell v. Dept. of Soc. Serv. of City of New York</u>, 436 U.S. 658 (1978) for failure to identify a policy or custom that led to plaintiff's allegedly unconstitutional commitment at Pike CCF. Plaintiff appears to counter with arguments that case law recognizes that the warden of a county prison has final decision-making authority to attach liability to Pike County and Warden Lowe determined that plaintiff should be kept incarcerated. (Doc. 24, Br. in Opp. at 9-10). As noted above, however, no specific factual allegations were made regarding Warden Lowe in plaintiff's complaint, and, in this regard, plaintiff's argument fails because it argues about facts not originally pled.[8] For the reasons set forth in this section and in section 1a regarding Warden Lowe above, the motion to dismiss will be granted.

---

dismiss. (Doc. 5, ¶ 35). Warden Lowe failed to brief his statutory immunity arguments. (<u>See</u> Docs. 14, 29). The court considers this argument waived with regard to this motion.

[8] Plaintiff's complaint does contain an allegation that all defendants in this case had a "pattern, practice and custom of subjecting citizens, such as the [p]laintiff, to unlawful arrest and detention in the absence of probable cause." (Doc. 1, ¶ 39). But given the sparse facts related to this allegation regarding the actions of Pike County (and Warden Lowe), this allegation is conclusory and insufficient to state a claim. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555).

### d. Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, a court must grant the plaintiff leave to amend, unless amendment would be inequitable or futile. See Phillips, 515 F.3d at 245 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002)). "In assessing futility [of amendment], the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)(citation and internal quotation marks omitted).

Warden Lowe argues in the motion to dismiss that he is entitled to qualified immunity. The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The two-part test to determine whether government officials should receive qualified immunity is well settled. Montemuro v. Jim Thorpe Area Sch. Dist., 99 F.4th 639, 642 (3d Cir. 2024) (citing Anglemeyer v. Ammons, 92 F.4th 184, 188

(3d Cir. 2024)).  Under the first prong of the qualified immunity analysis, a court must decide whether the facts that plaintiff has alleged (under Rule 12(b)(6)) or shown (under Rule 56) make out a violation of a constitutional right.  Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citation omitted).  Under the second prong, "the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Id. (citation omitted).  To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  In considering qualified immunity, the court may address the prongs of this test in any order. See Pearson, 555 U.S. at 242.  The defendant bears the burden of establishing that he is entitled to qualified immunity. Burns v. PA Dep't of Corr., 642 F.3d 163, 176 (3d Cir. 2011)(citing Harlow, 457 U.S. at 819).

"[I]f a person was arrested without probable cause, his or her detention may implicate the Fourth Amendment. If he or she was arrested with probable cause, the detention may amount to a deprivation of liberty without due process[,]" in violation of the Fourteenth Amendment. Brown v. Stewart, 910 F. Supp. 1064, 1074 (W.D. Pa. 1996)(discussing Baker v. McCollan, 443 U.S. 137, 143–46 (1979); Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995)). In a separate memorandum and order, the court has determined that Trooper

Olszar is entitled to qualified immunity after concluding that plaintiff could not establish that the trooper lacked probable cause in making the arrest. Accordingly, the court considers whether plaintiff has alleged facts making out a Fourteenth Amendment violation.

As stated:

> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law." A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers—all of whom may be potential defendants in a § 1983 action—is entirely consistent with "due process of law." Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. . .
>
> Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles. Just as "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official.

16

Baker, 443 U.S. at 145–46.

Plaintiff alleges that he spent three days in Pike CCF before being released based on a mistaken belief that he violated an active PFA order despite his protestations that the order had expired. While perhaps relevant to a tort claim of false imprisonment, a three-day detention based on the mistakes allegedly made here "does not and could not amount" to a deprivation of liberty without due process for the purposes of the Fourteenth Amendment. See id. The court finds that Warden Lowe would be entitled to qualified immunity if plaintiff were allowed to amend his Section 1983 false imprisonment claim and thus amendment of that claim would be futile.

This qualified immunity determination does not apply to plaintiff's state law claim for false imprisonment against Warden Lowe. See El v. City of Pittsburgh, 975 F.3d 327, 334, n. 3 (3d Cir. 2020)("Had the officers raised qualified immunity as a defense to the state-law claims, the argument would have failed, because qualified immunity is a defense only to violations of federal law under § 1983. Immunity from state law claims is governed by the state's immunity doctrine."). As for that claim, the court will grant plaintiff leave to amend based on the allegation that plaintiff advised guards at Pike CCF at the time of commitment that the PFA order against him had expired. Plaintiff may be able to plausibly allege a state law false imprisonment claim against Warden Lowe and the court

cannot conclusively determine at this time whether such claims would be futile pursuant to the various statutory or common law immunity arguments that could be raised by Warden Lowe under Pennsylvania law.  Furthermore, Pike County did not move to dismiss the state law false imprisonment claim brought against it in Count II of plaintiff's complaint and this claim would survive the motion to dismiss.

Furthermore, while the complaint contains serious factual deficiencies regarding claims against Pike County, plaintiff may be able to plausibly allege a Section 1983 claim against Pike County with the pleading of additional facts. The best course of action is to afford plaintiff the opportunity to file an amended complaint within the next twenty (20) days.  Plaintiff will be permitted to file an amended Section 1983 claim against Pike County.  Plaintiff is also granted leave to amend his state law false imprisonment claim against Warden Lowe.

**Conclusion**

For the reasons set forth above, Pike County and Warden Lowe's motion to dismiss (Doc. 5) will be granted.  Plaintiff's Section 1983 claim against Warden Lowe will be dismissed with prejudice without leave to amend based on Warden Lowe's qualified immunity.  Plaintiff, however, will be afforded twenty (20) days to file an amended complaint as to his Section 1983 claim against Pike County and his state law false imprisonment claim against Warden Lowe.  Should plaintiff fail

to file an amended complaint within that timeframe, the state law false imprisonment claim against Warden Lowe in Count II and the Section 1983 claim against Pike County in Count I will be dismissed with prejudice. An appropriate order follows.

Date: 7/3/24

JUDGE JULIA K. MUNLEY
United States District Court