## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHEL CHALHOUB,** | : | **No. 3:23cv592** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA; COLONEL** | : | |
| **ROBERT EVANCHICK,** | : | |
| **Commissioner of the Pennsylvania** | : | |
| **State Police; PENNSYLVANIA STATE** | : | |
| **POLICE TROOPER LUKASZ OLSZAR;** | : | |
| **COUNTY OF PIKE; and CRAIG A.** | : | |
| **LOWE, Warden Pike County** | : | |
| **Correctional Facility,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court is a motion to dismiss/motion for summary judgment filed by Defendants Commonwealth of Pennsylvania, Colonel Robert Evanchick and Trooper Lukasz Olszar (collectively "PSP Defendants"). Having been fully briefed, this motion is ripe for a decision.[1]

**Background**

On Sunday, May 23, 2021, at approximately 10:30 AM, Defendant Pennsylvania State Police Trooper Lukasz Olszar ("Trooper Olszar") responded

---

[1] The Honorable Robert D. Mariani transferred this case to the undersigned on November 7, 2023.

to Plaintiff Michel Chalhoub's residence in Dingman Township, Pike County, Pennsylvania for a report of a "physical domestic." (Doc. 1-2, Exh. A. to Pl. Compl., Police Crim. Compl., Aff. of Prob. Cause, ECF p. 4).  Per Trooper Olszar's affidavit of probable cause, the police communications operator ("PCO") advised there was an active Protection From Abuse order ("PFA order") issued against plaintiff for the protection of a person at the residence. (Id.)

On scene, another trooper interviewed the purported victim of physical abuse, and she indicated that plaintiff threw an ashtray at her causing burn marks on the back of her shirt. (Id.)  Per Trooper Olszar's narrative, the PFA Order was issued for the protection of that person, and he indicated in his affidavit that the expiration date of that order was August 12, 2023. (Id.)  After burn marks on the alleged victim's shirt were reportedly observed and photographed, Trooper Olszar placed plaintiff into custody and charged him with violating an active PFA order. (Id.)

The PFA order had actually expired months earlier, on February 26, 2021. (Doc. 1 ¶ 20).  Plaintiff alleges that he told Trooper Olszar that the PFA order expired, but Trooper Olszar accused plaintiff of lying and still placed him into custody. (Id. ¶ 18).

Per the complaint, Trooper Olszar told the arraigning state magisterial district judge that the PFA order remained active, and the judge credited the

2

trooper's incorrect statements and not the plaintiff's accurate statements. (Id. ¶ 22).

The magisterial district judge set bail at $40,000, which plaintiff could not post. (Id. ¶ 24). Plaintiff was committed to the Pike County Correctional Facility ("Pike CCF") based on Trooper Olszar's false statements that plaintiff violated the PFA Order. (Id. ¶ 25).

Plaintiff spent three days at Pike CCF. (Id. ¶ 28). On May 26, 2021, a Pike CCF employee told plaintiff to gather his belongings to leave the jail without further explanation. (Id. ¶ 29).

Plaintiff further alleges in his complaint that he had open heart surgery in August 2020. (Id. ¶ 8). During that surgery, plaintiff's ribs were wired together. (Id.) He needed another surgery on May 8, 2021 from the constant pain in his ribs. (Id. ¶ 9). During that surgery, plaintiff had metal plates placed in his chest. (Id. ¶ 10). When Trooper Olszar placed plaintiff into custody, a drainage tube was still attached to the bottom of plaintiff's chest from the most recent surgery. (Id.)

Upon release, plaintiff took the train to his son's house in New Jersey. (Id. ¶ 30). The next day, plaintiff suffered severe pain and went to an emergency room. (Id. ¶ 35). As a result, plaintiff received an operation due to a "serious life-threatening" internal infection, which continues to occur. (Id. ¶ 35, 42). He further

3

alleges that the infection occurred because he could not attend the scheduled medical procedure to remove his drainage tube during his incarceration. (Id. ¶¶ 11, 34-35).

Based on the above allegations, plaintiff filed the complaint on April 6, 2023.  He asserts two causes of action: Count I – a claim pursuant to 42 U.S.C. § 1983 ("Section 1983") for alleged Fourth and Fourteenth Amendment violations against all defendants; and Count II – a state law claim for false imprisonment against Trooper Olszar.[2]  (Id. ¶¶ 45-56).

PSP Defendants responded to the complaint with the instant motion to dismiss, or in the alternative, motion for summary judgment.  Among other arguments raised in the motion, Trooper Olszar asserts that he is entitled to qualified immunity.  The parties have briefed their respective positions and this matter is ripe for disposition.

**Jurisdiction**

Because this case is brought pursuant to Section 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

---

[2] By way of a separate memorandum and order, the court granted a motion to dismiss filed by Defendants Pike County and Warden Lowe and afforded plaintiff leave to file an amended complaint as to his Section 1983 claim against Pike County and his state law false imprisonment claim against Warden Lowe.

the United States."). The court has supplemental jurisdiction over plaintiff's state-law false imprisonment claim pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  In the alternative, defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The standard for a motion to dismiss for failure to state a claim and the standard for a motion for summary judgment differ in significant ways.  Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 772 (3d Cir. 2013).

A threshold question in this case is whether the court should address defendants' motion as one under Rule 56 or exclude the matters raised outside the pleadings and proceed under Rule 12(b)(6).  On one hand, the Federal Rules of Civil Procedure require that "[a]ll parties be given a reasonable opportunity to present all the material that is pertinent to the motion[,]" when treating a motion to dismiss as a motion for summary judgment. FED. R. CIV. P. 12(d).  On the other

5

hand, defendants refer to matters outside the pleadings to advance Trooper Olszar's claim of qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation[.]" Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). And the Supreme Court of the United States has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991)(citations omitted).

Furthermore, plaintiff has received ample notice of the possibility that the court could treat portions of the motion to dismiss regarding qualified immunity as a motion for summary judgment. In opposition to PSP Defendants' motion, plaintiff filed a counter statement of material facts. (Doc. 22). Plaintiff has not indicated that he cannot present facts essential to justify his opposition to the motion nor has he requested a period of discovery to appropriately respond. Rather, he has also directly countered Trooper Olszar's qualified immunity arguments in his brief in opposition and commented on the documents submitted by the defendants in conjunction with Trooper Olszar's affidavit. Under these circumstances, the court will treat the motion to dismiss regarding qualified immunity as a motion for summary judgment. See Carver v. Plyer, 115 F. App'x 532, 536 (3d Cir. 2004) ("[M]otions for summary judgment that are presented to the court as motions in the alternative constitute sufficient notice to a non-moving party that the court may convert a motion to dismiss into a motion for summary

judgment.") (citation omitted).  As for the remainder of the arguments raised by PSP Defendants, the court will not treat the motion to dismiss as a motion for summary judgment since these defendants do not refer to any matters outside the pleadings in support of their position.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. (citing Twombly, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).  Furthermore, courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a Rule 12(b)(6) motion. Pension Ben.

Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.

1993)(citations omitted).

Granting summary judgment under Rule 56 is proper " 'if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law.' " See Knabe v.

Boury Corp., 114 F.3d 407, 410 n. 4 (3d Cir.1997) (quoting FED. R. CIV. P. 56(c)).

"[T]his standard provides that the mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of *material*

fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in

original).

In considering a motion for summary judgment, the court must examine the

facts in the light most favorable to the party opposing the motion. Int'l Raw

Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir.1990).  The

burden is on the moving party to demonstrate that the evidence is such that a

reasonable jury could not return a verdict for the non-moving party. Anderson,

477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the

suit under the governing law. Id.  Where the non-moving party will bear the

burden of proof at trial, the party moving for summary judgment may meet its

8

burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Analysis**

Plaintiff asserts a Section 1983 claim against the PSP Defendants for violations of his Fourth and Fourteenth Amendment rights and a state law claim for false imprisonment against Trooper Olszar.  In addition to Trooper Olszar's qualified immunity claim, PSP Defendants argue that plaintiff's Fourteenth Amendment claims should be dismissed pursuant to the explicit textual source rule.  PSP defendants also argue that the claims against Colonel Evanchick should be dismissed due to factual deficiencies in the complaint.  The court will address whether plaintiff can proceed with a claim under both the Fourth and Fourteenth Amendments before turning to Trooper Olszar's qualified immunity claim and the other arguments raised in the motion. [3]

---

[3] The court notes that the Commonwealth of Pennsylvania has not raised any arguments in support of dismissal of plaintiff's Section 1983 claim.  Consequently, plaintiff's Section 1983 claim against the Commonwealth survives the motion.

### a. Whether Plaintiff's Fourteenth Amendment Claim Can Proceed

In asserting his Section 1983 action, plaintiff alleges that he was "illegally arrest[ed]. . .without justification or cause and falsely imprison[ed.]"  (Doc 1, Compl. ¶ 49).  Plaintiff relies on both the Fourth and Fourteenth Amendments and PSP Defendants move for the dismissal of plaintiff's Fourteenth Amendment claims as a matter of law.  PSP Defendants argue that the Fourth Amendment's guarantee against unreasonable seizures provides the explicit text undergirding the action instead of the more general protections of the due process clause of the Fourteenth Amendment.

The Fourth Amendment provides, in part: "The right of the people to be secure in their persons. . .against unreasonable. . .seizures, shall not be violated[.]" U.S. CONST. amend. IV.  The Fourteenth Amendment provides, also in part: "No State shall. . .deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, § 1.

The Supreme Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (citation and internal quotation marks omitted).  Put another way, "when government behavior is governed by a specific

constitutional amendment, due process analysis is inappropriate." <u>Berg v. Cnty.</u> <u>of Allegheny</u>, 219 F.3d 261, 268 (3d Cir. 2000).

"A false imprisonment claim under [Section] 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures." <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995)(citations omitted); <u>see also</u> <u>James v. City of Wilkes-</u> <u>Barre</u>, 700 F.3d 675, 683 (3d Cir. 2012).  Moreover, "[a]lthough not all actions by police officers are governed by the Fourth Amendment. . .the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis." <u>Berg</u>, 219 F.3d at 268–69; <u>see also</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 142 (1979) (interpreting Section 1983 false imprisonment claim as grounded in Fourth Amendment rights); <u>Groman</u>, 47 F.3d at 636 (same). Deprivation of liberty and due process claims under the Fourteenth Amendment are seen as duplicative to Fourth Amendment claims when a plaintiff alleges false arrest and false imprisonment.  <u>See</u> <u>Bradley v. Kuntz</u>, 655 F. App'x 56, 59 (3d Cir. 2016).

Because plaintiff's averments of false arrest and false imprisonment are grounded in the Fourth Amendment, the court will dismiss the portion of his Section 1983 claims relying upon the Fourteenth Amendment.

### b. Whether Trooper Olszar is Entitled to Qualified Immunity

Turning next to Trooper Olszar, he asserts that he is entitled to qualified immunity in this action. As noted above, the court will consider this portion of PSP defendants' motion as a motion for summary judgment under Rule 56. Both parties have submitted statements of material facts.[4] (See Docs. 16, 22). A reading of both sides' statements indicates that there are no material factual disputes. Rather, the dispute is one of law: whether Trooper Olszar had probable cause to arrest plaintiff and whether his conduct was reasonable under the circumstances. Per plaintiff, Trooper Olszar did not have probable cause and thus qualified immunity does not attach. Based on the undisputed facts of this case, however, the court disagrees.

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[4] The Rules of Court for the Middle District ("Local Rules") require a party seeking summary judgment to file "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D.PA. L.R. 56.1. PSP Defendants have complied with the Local Rules by filing their concise statement. (Doc. 16). The Local Rules requires a party opposing summary judgment to respond to the numbered paragraphs set forth in the statement by the moving party, as to which it is contended that there exists a genuine issue to be tried. Plaintiff filed a counterstatement of material facts but did not directly respond to the PSP Defendants' statement. (Doc. 22). Rather than strike plaintiff's counterstatement for noncompliance with the Local Rules, the court will read the parties' filings together to determine which facts are disputed and which facts are not.

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.' " Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The two-part test to determine whether government officials should receive qualified immunity is well settled. Montemuro v. Jim Thorpe Area Sch. Dist., 99 F.4th 639, 642 (3d Cir. 2024) (citing Anglemeyer v. Ammons, 92 F.4th 184, 188 (3d Cir. 2024)). Under the first prong of the qualified immunity analysis, a court must decide whether the facts that plaintiff has alleged (under Rule 12(b)(6)) or shown (under Rule 56) make out a violation of a constitutional right. Pearson v. Callahan, 555 U.S. 223, 232 (2009)(citation omitted). Under the second prong, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. (citation omitted). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In considering qualified immunity, the court may address the prongs of this test in any order. See Pearson, 555 U.S. at 242. The defendant bears the burden of establishing that he is entitled to qualified immunity. Burns v. PA Dep't of Corr., 642 F.3d 163, 176 (3d Cir. 2011)(citing Harlow, 457 U.S. at 819).

13

Under the first prong of the qualified immunity analysis, the court asks "if the facts, '[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a constitutional right.'" Lozano v. New Jersey, 9 F.4th 239, 245 (3d Cir. 2021)(quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).  The court first discusses whether the undisputed facts of this case establish a violation of plaintiff's Fourth Amendment rights.

Since the Fourth Amendment protects "'[t]he right of the people to be secure in their persons. . .against unreasonable searches and seizures[,]' [a]n arrest. . .qualifies as a 'seizure' of a 'person'. . .and so must be reasonable under the circumstances." Ashcroft v. al-Kidd, 563 U.S. 731, 736 (2011)(citations omitted).  To determine Fourth Amendment "reasonableness," courts ask whether, when objectively viewed, the circumstances justify the challenged action. See id. (citations omitted).  If so, that action is reasonable regardless of the subjective intent motivating the relevant officials. Id. (citation omitted).  Under this reasonableness standard, a seizure "may be permissible even though the justification includes a reasonable factual mistake." Heien v. North Carolina, 574 U.S. 54, 57 (2014).

Moreover:

> Far from demanding proof of guilt beyond a reasonable doubt, "[p]robable cause exists if there is a 'fair probability' that the person committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (quoting

14

> Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).
> Put another way, "probable cause to arrest exists when the
> facts and circumstances within the arresting officer's
> knowledge are sufficient in themselves to warrant a
> reasonable person to believe that an offense has been or
> is being committed by the person to be arrested." Orsatti v.
> N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995). The
> probable cause standard thus provides individuals
> protection "against unreasonable searches and seizures,"
> U.S. Const. amend. IV, while simultaneously enabling
> investigating officers to act quickly—before necessarily
> obtaining evidence sufficient to prove guilt beyond a
> reasonable doubt—to effect an arrest. "[T]he standard
> does not require that officers correctly resolve conflicting
> evidence or that their determinations of credibility, were, in
> retrospect, accurate." Wright v. City of Phila., 409 F.3d 595,
> 603 (3d Cir. 2005).

Dempsey v. Bucknell Univ., 834 F.3d 457, 467 (3d Cir. 2016).

All told, "officers are entitled to qualified immunity when they 'reasonably but mistakenly conclude that probable cause is present[.]' " Lozano, 9 F.4th at 246 (quoting Anderson, 483 U.S. at 641).

In this matter, Trooper Olszar has supplied a declaration indicating that he: 1) conducted a National Crime Information Center ("NCIC") query prior to responding to the domestic violence call from plaintiff's residence and found an active PFA order against plaintiff that did not expire until August 12, 2023; and 2) confirmed with a dispatcher that the PFA order was active. (Doc. 16-1, Decl. of L. Olszar ¶¶ 1-4). On scene, Trooper Olszar encountered the person protected by the PFA, who advised the officer that plaintiff threw an ashtray at her causing

15

burn marks on the back of her clothing.  (Doc. 1-2, Exh. A. to Pl. Compl., Police

Crim. Compl., Aff. of Prob. Cause, ECF p. 4).  Based upon the information

available to Trooper Olszar, he arrested plaintiff for violation of the PFA order.

(Id.)

Trooper Olszar has also supplied the NCIC record available to him on the

date of his response to plaintiff's residence.  That record reflects an entry

showing that the PFA order expired on August 12, 2023. (Doc. 16-2, NCIC

Record). Additionally, Trooper Olszar has submitted the victim statement from

the protected party detailing that she confronted plaintiff over his use of money

she was saving for herself, and plaintiff responded by hitting her on her head and

throwing an ashtray at her.  (Doc. 16-3, Victim/Witness Statement Form).

Plaintiff has not provided anything to the court to dispute these facts.  In

response to Trooper Olszar's affidavit and the PSP records, plaintiff emphasizes,

however, the following contents of the NCIC record: "WARNING – THE

FOLLOWING IS A PSP PROTECTION ORDER RECORD.  DO NOT SEARCH,

DETAIN, OR ARREST BASED SOLELY ON THIS RECORD.  CONTACT

ENTERING AGENCY TO CONFIRM STATUS AND TERMS OF PROTECTION

ORDER." (Doc. 16-2, NCIC Record).  Per plaintiff, this is evidence that Trooper

Olszar's actions were objectively unreasonable or otherwise negates his

probable cause to arrest plaintiff without a warrant.

16

This disclaimer in the NCIC record, however, even construed in a light most favorable to plaintiff, is insufficient to defeat the objective reasonableness principles inherent in the Fourth Amendment.  Per his unrebutted evidence, Trooper Olszar did not arrest solely based on this record.  He interviewed the purported victim of physical abuse, obtained a statement from her, and documented her injuries.

Moreover, the entering agency referred to in the NCIC record is the Pennsylvania State Police, Trooper Olszar's employer. See id.  It is undisputed that Trooper Olszar radioed a communications operator to cross-check the NCIC result.  (Doc. 16-1, Decl. of L. Olszar ¶¶ 4).  And to the extent that it might be reasonable for Trooper Olszar to contact the issuing authority, i.e., the court, Trooper Olszar responded to a domestic violence call on a Sunday morning when county courthouses are closed.  A response to domestic violence cannot wait until court is in session.

Plaintiff also overreads the requirements imposed upon police officers by the PFA Act.  The Pennsylvania State Police are required to maintain "a complete and systematic record and index of all valid temporary and final court orders of protection," including information reflecting the names of protected parties and defendants, relationships between the parties, the dates orders were entered, and the dates that orders expire. 23 PA. CONS. STAT. § 6105(e)(1)(i)-(ix).

17

That information is shared with the NCIC. See 28 U.S.C. § 534(f); 28 C.F.R. §20.30, *et. seq*; see also PA. R. CIV. P. § 1905 & expl. cmt. 1997 (requiring standardized PFA form orders so that all PFA orders can be properly registered with the federal Protection Order File established by NCIC).

But the registry is only as good as the information received and inputted. Pursuant to the PFA Act, prothonotaries are required to transmit information regarding the entry of protection orders, amendments, and any revocation within twenty-four (24) hours. 23 PA. CONS. STAT. § 6105(e)(2).  Here, Trooper Olszar has indicated that removing incorrect information from the NCIC required coordination between the Pike County Prothonotary's Office and Pennsylvania State Police personnel after any discrepancy was discovered. (Doc. 16-1, Decl. of L. Olszar ¶ 10).

Additionally, the court notes that the PFA Act expressly mandates arrests for violations of PFA orders and authorizes arrests without a warrant upon probable cause for a violation. 23 PA. CONS. STAT. § 6113(a).  Although the statute mandates arrests, officer verification of PFA orders remains discretionary under the PFA Act. See id. ("The police officer or sheriff **may** verify the existence of a protection order by telephone, radio or other electronic communication with the appropriate police department, Pennsylvania State Police registry, protection order file or issuing authority. A police officer or sheriff **shall** arrest a defendant

18

for violating an order issued under this chapter by a court within the judicial district[.]")(emphasis added).

"The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.' " Pearson, 555 U.S. at 231 (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)(Kennedy J., dissenting)(further citation and explanatory parenthetical omitted).  In light of the undisputed facts, plaintiff has failed to establish that Trooper Olszar lacked probable cause to arrest him for violation of a PFA order or that a reasonable officer in Trooper Olszar's position would have known that probable cause was lacking.  Plaintiff has thus failed to demonstrate that his Fourth Amendment rights were violated.[5]

---

[5] These same undisputed facts would support a conclusion under the second prong of the qualified immunity analysis that Trooper Olszar did not violate a clearly established right which every reasonable officer would have known.  If Trooper Olszar did not have probable cause, the law was not so well-settled in May 2021 that Trooper Olszar would have known that his actions were unlawful, i.e., he was required by decisional precedent to eliminate all possibilities that the NCIC record was inaccurate prior to arresting plaintiff for violation of a PFA order shown as active in that system.  Existing case law supports the opposite conclusion. See e.g. Herring v. United States, 555 U.S. 135 (2009)(holding that the exclusionary rule does not apply when police mistakes leading to an unlawful search are the result of isolated negligence from the failure to update a police database, and not systemic error or reckless disregard of constitutional requirements); United States v. McDowell, 745 F.3d 115, 121–22 (4th Cir. 2014)("The pervasive use of NCIC reports throughout the criminal justice system further indicates that such reports may be trusted."); United States v. McDonald, 606 F.2d 552 (5th Cir. 1979) ("NCIC printouts are reliable enough to form the basis of the reasonable belief which is needed to establish probable cause for arrest.") (citation and quotation marks omitted).

Accordingly, Trooper Olszar is entitled to qualified immunity and the Section 1983 claim against him will be dismissed.[6]

### c. Whether Plaintiff's Complaint States a Section 1983 Claim Against Colonel Evanchick

Having addressed Trooper Olszar's qualified immunity arguments, plaintiff also specifically names Colonel Evanchick as a defendant, asserting that he and the other defendants "knew or should have known that there was no outstanding [PFA Order] against [p]laintiff and that the [p]laintiff had not violated any outstanding [PFA Order]." (Id. ¶ 47). PSP Defendants move to dismiss plaintiff's Section 1983 claim against Colonel Evanchick due to his lack of personal involvement.

In Section 1983 actions, a plaintiff must plausibly plead facts that demonstrate a defendant's personal involvement in the alleged misconduct and cannot rely solely on a *respondeat superior* theory of liability. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020)(citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Pleading personal involvement requires particular

---

[6] This conclusion does not result in the dismissal of plaintiff's state law claim against Trooper Olszar for false imprisonment. See El v. City of Pittsburgh, 975 F.3d 327, 334, n. 3 (3d Cir. 2020)("Had the officers raised qualified immunity as a defense to the state-law claims, the argument would have failed, because qualified immunity is a defense only to violations of federal law under § 1983. Immunity from state law claims is governed by the state's immunity doctrine.").

allegations of personal direction or of actual knowledge and acquiescence. Id.;
see also Iqbal, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is
inapplicable to ...§ 1983 suits, a plaintiff must plead that each Government-official
defendant, through the official's own individual actions, has violated the
Constitution").

Plaintiff's complaint is silent as to the alleged action or inaction of Colonel
Evanchick. There are no particular allegations of direct wrongful conduct. There
are no allegations that Colonel Evanchick directed state troopers to do or not do
anything related to plaintiff's claims. Likewise, the complaint does not contain
allegations that Colonel Evanchick had any actual knowledge of plaintiff's
circumstances. The facts of the complaint, even when assumed true and
construed in a light most favorable to plaintiff, only sets forth a Section 1983
claim against Colonel Evanchick under principles of *respondeat superior*. [7]
Accordingly, the court must dismiss the Section 1983 claim against Colonel
Evanchick in Count I of the complaint for lack of personal involvement.

---

[7] Plaintiff's brief in opposition argues that Colonel Evanchick is liable under Section 1983 for
failure to train and supervise state troopers so that people would not be illegally arrested when
troopers fail to verify whether PFA orders were in effect. (Doc. 23 at 11–13). Plaintiff,
however, has not made any factual allegations against Colonel Evanchick in the complaint that
would support this argument. (See Doc. 1). The court will not address arguments by the
parties that extend beyond the facts pled in the complaint regarding plaintiff's claims against
Colonel Evanchick.

### d. Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, a court must grant the plaintiff leave to amend, unless amendment would be inequitable or futile. See Phillips, 515 F.3d at 245 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002)). "In assessing futility [of amendment], the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)(citation and internal quotation marks omitted).

Although the complaint contains serious factual deficiencies regarding claims against Colonel Evanchick, the court will permit amendment. Plaintiff may be able to plausibly allege a Section 1983 claim against the Commissioner of the Pennsylvania State Police by pleading additional facts. Furthermore, the Commonwealth did not move to dismiss the Section 1983 claim brought against it in Count I of plaintiff's complaint and this claim would survive the motion to dismiss. Accordingly, the best course of action is to afford plaintiff an opportunity to file an amended complaint against Colonel Evanchick within the next twenty (20) days. Should plaintiff fail to file an amended complaint, his claims against Colonel Evanchick will be dismissed with prejudice.

## Conclusion

For the reasons set forth above, PSP Defendants' motion to dismiss/motion for summary judgment (Doc. 18) will be granted.  Trooper Olszar is entitled to qualified immunity on plaintiff's Section 1983 claim.  PSP Defendants did not move for dismissal of the state law false imprisonment claim against Trooper Olszar and thus that claim will move forward.  Additionally, plaintiff will be afforded twenty (20) days to amend his Section 1983 claim against Colonel Evanchick.  Should plaintiff fail to file an amended complaint within that timeframe, the Section 1983 claim against Colonel Evanchick in Count I will be dismissed with prejudice.  An appropriate order follows.

Date: 7/3/24

JUDGE JULIA K. MUNLEY
United States District Court